Revised December 4, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

────────────────────────

No. 02-20751

────────────────────────

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,


                            versus

JESUS MARTIN CAICEDO-CUERO,

                                        Defendant-Appellant.


────────────────────────

Appeal from the United States District Court
For the Southern District of Texas

────────────────────────

November 14, 2002

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     Jesus Martin Caicedo-Cuero ("Caicedo") appeals his sentence of twenty-one months' imprisonment for illegal reentry into the United States pursuant to 8 U.S.C. § 1326. He presents us with two issues: First, whether the district court erred in determining that his "state jail felony" conviction for simple possession of marijuana constituted a felony for purposes of 8 U.S.C. § 1326(b)(2)'s heightened maximum statutory sentence for prior aggravated felonies and the eight-level aggravated felony enhancement under Sentencing Guideline § 2L1.2(b)(1)(C). Second,

whether the trial court erred in concluding that his prior conviction was for a "drug trafficking crime" and therefore an aggravated felony under the 2001 version of § 2L1.2(b)(1)(C). Reviewing the district court's interpretation and application of the Sentencing Guidelines de novo,[1] we resolve these questions in the same manner as the district court, and thus affirm Appellant's sentence.

## I

In 1995, Caicedo, a Colombian citizen, pleaded guilty and received a sentence of five years' deferred adjudication probation in Harris County, Texas for the "state jail felony" offense of possession of marijuana.[2] At the time of his prior offense, Texas law provided that courts could impose a sentence of incarceration of between 180 days and two years for commission of state jail felonies.[3] However, for first-time offenders, the law also mandated that courts suspend imposition of the sentence and place the defendant on community supervision.[4]

---

[1] *United States v. Serna*, – F.3d –, 2002 WL 31272357, at *1 (5th Cir. Oct. 11, 2002).

[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(3) (Vernon 1995). Caicedo was convicted of knowingly or intentionally possessing 1.75 pounds of marijuana.

[3] TEX. PENAL CODE ANN. § 12.35(a) (Vernon 1995).

[4] TEX. CRIM. PRO. CODE ANN. art. 42.12, § 15(a) (Vernon 1995). As a condition of community supervision, the law allowed trial courts to require defendants to serve a maximum of 60 days in a state jail felony facility. *Id.* § 15(d). The law has since been amended to make suspension of the sentence and imposition of

In 1996, Appellant was deported to Colombia. Sometime thereafter, he illegally reentered the United States. In 2002, he was caught and charged with one count of illegal reentry in violation of 8 U.S.C. § 1326. He pleaded guilty to the charge, and the district court sentenced him to twenty-one months' incarceration and three years of supervised release. The court calculated the sentence based on its conclusion that the defendant's prior conviction qualified as an aggravated felony under § 1326(b)(2) and Sentencing Guideline § 2L1.2(b)(1)(C). Section 1326(b)(2) mandates that a defendant "whose removal was subsequent to a conviction for commission of an aggravated felony" be susceptible to a maximum sentence of twenty years.[5] Moreover, Sentencing Guideline § 2L1.2(b)(1)(C) provides that a defendant previously removed after commission of an aggravated felony should receive an eight-level offense enhancement.[6]

Caicedo urged at sentencing that his prior crime did not constitute an aggravated felony because, as a first-time offender, he was susceptible only to community supervision, and the

---

community supervision discretionary. *See* TEX. CRIM. PRO. CODE ANN. art. 42.12, § 15(a) (Vernon 2001) ("On conviction of a state jail felony punished under Section 12.35(a), Penal Code, the judge may suspend the imposition of the sentence and place the defendant on community supervision or may order the sentence to be executed.").

[5] 8 U.S.C. § 1326(b)(2) (2001).

[6] U.S. Sentencing Guidelines Manual [hereinafter "USSG"] § 2L1.2(b)(1)(C) (2001).

definition of "felony" applicable in determining whether his prior crime constituted an aggravated felony requires the crime to be punishable by over a year in prison. The district court found, however, that the defendant's prior crime constituted an aggravated felony even under the definition proffered by Appellant. It reasoned that, although Texas law mandated suspension of the term of imprisonment and imposition of community supervision for first-time offenders, the applicable statutory range of punishment for his offense was still 180 days to two years of incarceration. The district court characterized the mandatory probation provision for first-time offenders as a "sentencing factor" that benefitted first-time offenders but did not otherwise alter the statutory maximum punishment.

Caicedo additionally objected to imposition of the aggravated felony enhancement on the basis that his prior conviction for simple possession did not constitute a "drug trafficking crime" under the 2001 version of the Sentencing Guidelines. The district court also rejected this contention, relying upon *United States v. Hinojosa-Lopez*,[7] which held that, under a prior version of § 2L1.2, a state felony conviction for simple possession constituted a drug trafficking crime and therefore an aggravated felony warranting an offense-level enhancement.

**II**

---

[7] 130 F.3d 691, 693-94 (5th Cir. 1997).

On appeal, Caicedo first reurges that the correct definition of "felony" for purposes of the aggravated felony provisions requires a maximum imprisonment range exceeding one year, and that, under this definition, his prior conviction for simple possession is not an aggravated felony because the maximum punishment to which he could have been subjected was community supervision. The primary support for Appellant's position lies in *United States v. Robles-Rodriguez*, a case factually similar to Caicedo's.[8] The *Robles-Rodriguez* court held that a state drug conviction for which the maximum penalty was probation could not be an aggravated felony triggering a sentence enhancement under § 2L1.2.[9]

Robles-Rodriguez had been convicted of two drug possession offenses under Arizona law prior to his initial deportation.[10] After he illegally reentered, he was apprehended and pleaded guilty to illegal reentry under 8 U.S.C. § 1326.[11] The district court found that the crimes for which the defendant had been convicted in Arizona, which were classified as "felonies" under Arizona law, were "aggravated felonies" warranting an offense level enhancement

___

[8] 281 F.3d 900 (9th Cir. 2002).

[9] *Id.* at 901. The 2000 version of the Guidelines, at issue in *Robles-Rodriguez*, provided for a sixteen-level enhancement if the prior conviction was an aggravated felony. USSG § 2L1.2(b)(1)(A) (2000).

[10] 281 F.3d at 902.

[11] *Id.*

5

under § 2L1.2.[12]  However, these crimes were governed by an Arizona law requiring courts "to sentence nonviolent persons convicted of first- and second-time drug possession offenses to probation and participation in a drug treatment program."[13]  Under this law, "state trial courts have no discretion to sentence first-time offenders to incarceration," and for second-time offenders, the courts "may, as a condition of probation, impose up to one year of jail time, but may not impose a prison sentence."[14]  The Ninth Circuit concluded that, despite the fact that state law described the crimes as felonies, they were not felonies for purposes of the aggravated felony enhancement because the maximum sentence to which Robles-Rodriguez was subject under state law was probation.[15]

In examining whether the defendant's prior convictions were felonies for purposes of the aggravated felony enhancement, the *Robles-Rodriguez* court faced the rather confusing question of which definition of "felony" should apply to the aggravated felony enhancement.  The commentary to § 2L1.2 provides its own definition of "felony offense," which is "any federal, state, or local offense punishable by imprisonment for a term exceeding one year."[16]

---

[12] *Id.* at 901-02 & 902 n.2.

[13] *Id.* at 902.

[14] *Id.*

[15] *Id.*

[16] USSG § 2L1.2 cmt. n.1 (2000).

However, the commentary also provides that "'aggravated felony' is defined at 8 U.S.C. § 1101(a)(43)."[17] Because the commentary refers users to a special statutory definition of "aggravated felony," the *Robles-Rodriguez* court looked to 8 U.S.C. § 1101(a)(43) for guidance as to which definition of "felony" should be used in deciding whether a prior crime is an aggravated felony.[18]

Section 1101(a)(43) contains a list of aggravated felonies, which includes "a drug trafficking crime (as defined in section 924(c) of Title 18)."[19] Turning to 18 U.S.C. § 924(c), the court noted that this section defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act [CSA] (21 U.S.C. 801 et seq.)."[20] As Robles-Rodriguez's prior conviction for simple possession qualified as a crime punishable under the Controlled Substances Act, the court looked to the CSA's definition of "felony," which is found in 21 U.S.C. § 802(13), to determine whether the crime was indeed a felony punishable under the CSA.[21] That section defines a felony as "any Federal or State offense classified by applicable Federal or State law as a felony."[22] The

---

[17] *Id.*

[18] 281 F.3d at 903.

[19] 8 U.S.C. § 1101(a)(43) (2001).

[20] 281 F.3d at 903 (quoting 18 U.S.C. § 924(c)(2) (1994)).

[21] *Id.*

[22] 21 U.S.C. § 802(13) (2001).

government contended that, under the plain meaning of this definition, Robles-Rodriguez's prior convictions qualified as felonies, because Arizona law labeled the crime a "felony."[23]

However, the Ninth Circuit looked past the definition found in § 802(13), and discovered that § 802(44) defined a "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances."[24] Contrary to the government's argument that the court should apply the definition of felony found in § 802(13) and conclude "that an offense is a felony under the Controlled Substance Act as long as the convicting jurisdiction labels it as such, without regard to the punishment designated for the offense,"[25] the court found that such a reading of § 803(13) violated basic principles of statutory construction, as it would bring § 803(13)'s definition of "felony" into conflict with § 803(42)'s definition of "felony drug offense."[26] Instead, it determined that incorporation of § 803(42)'s "imprisonment for more than one year" requirement into §

---

[23] 281 F.3d at 904. Simple possession is not a felony under federal law. *United States v. Hinojosa-Lopez*, 130 F.3d 691, 693 (5th Cir. 1997).

[24] 281 F.3d at 904 (quoting 21 U.S.C. § 802(44) (1994)).

[25] *Id.*

[26] *Id.* at 904-05.

8

803(13)'s felony definition corresponded to Congress's "longstanding practice of equating the term 'felony' with offenses punishable by more than one year's imprisonment," and gave proper deference to a state's decision to treat simple drug possession "as a medical problem best handled by treatment and education, not by incarceration."[27] It reasoned that to conclude otherwise would be to prioritize an "outdated and meaningless label" over the substance of the punishment itself.[28]

As recognized by *Robles-Rodriguez*, two definitions of felony inhere in 21 U.S.C. § 802: The definition of "felony" found in § 802(13), and the definition of "felony drug offense" found in § 802(44). Appellant would have us follow the *Robles-Rodriguez* court's lead by reading § 802(44)'s "more than one year of confinement" requirement into the definition of felony found in § 802(13).

In the alternative, Caicedo argues that neither definition in 21 U.S.C. § 802 applies, because § 802 specifies that these definitions are only to be applied to terms as used in Title 21.[29] He posits that because the applicable definition of drug trafficking crime, "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)," is found in 18 U.S.C. §

---

[27] *Id.*

[28] *Id.* at 905.

[29] 21 U.S.C. § 802 (2001).

9

924(c), the definition of felony found in Title 18 should apply to the "any felony" part of the drug trafficking definition. Appellant asserts that, therefore, 18 U.S.C. § 3559(a) provides the appropriate definition of felony. That section provides for several classes of felonies and misdemeanors. Specifically, it explains that the lowest felony category is Class E felonies, which are those crimes for which the maximum term of imprisonment is "less than five years but more than one year."[30] Caicedo explains that § 3559(a) is a recodification of 18 U.S.C. § 1(1), which, prior to its repeal, provided that "[a]ny offense punishable by death or imprisonment for a term exceeding one year is a felony."[31] Appellant urges that, prior to its repeal, 18 U.S.C. § 1's definition of felony unquestionably controlled § 924(c), and that there is no indication either in the language of § 924(c) or in any legislative history that Congress did not intend the definition of felony set forth in § 1 to continue to apply to § 924(c) after the repeal of § 1 and its recodification in § 3559.

Although the government champions the definition of felony found in 21 U.S.C. § 802(13), which requires only that the state

---

[30] 18 U.S.C. § 3559(a) (2001).

[31] 18 U.S.C. § 1 (1984); *see United States v. Graham*, 169 F.3d 787, 793 n.5 (3d Cir. 1999) ("The legislative history suggests that § 3559 was enacted to put the definitions of felony and misdemeanor within the sentencing part of the statute and to create subdivisions within the felony and misdemeanor categories, consistent with the reformers' desire to create clear sentencing categories. Thus, the repeal seems to have been mostly a matter of housekeeping.").

have classified the crime a felony,[32] the government explains that we need not sort through this labyrithine maze of definitions, because even under the definitions advocated by Appellant, Caicedo's crime was a felony. Despite the fact that Texas state

---

[32] Relying on our prior decisions in *United States v. Hernandez-Avalos,* 251 F.3d 505 (5th Cir. 2001)*,* and *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), the government urges that we have already decided the issue of which definition of felony to apply in determining whether a prior conviction for simple possession qualifies as an aggravated felony. However, this issue has never before been brought squarely before the court. The cases cited by the government held that the appellants' prior convictions for simple possession were drug trafficking crimes and therefore aggravated felonies because they were felonies under state law and punishable, albeit as misdemeanors, under the Controlled Substances Act. As *Hinojosa-Lopez* explained, the defendant there contended that the definition of drug trafficking crime, which is "any felony punishable under the" CSA, "indicates that in order to qualify as an aggravated felony, the crime must be classified as a felony by the [CSA]." *Id.* at 693. The court disagreed with this argument, finding instead that the definition of drug trafficking crime encompassed two separate elements: "(1) that the offense be punishable under the Controlled Substances Act ...; and (2) that the offense be a felony." *Id.* at 694 (internal quotation marks omitted). Thus, if a crime is a felony "under applicable state law and [i]s punishable under the [CSA]," it is a drug trafficking crime. *Id.* (internal quotation marks omitted).

The government reads these cases as holding that whether a drug crime punishable under the CSA is a felony for purposes of the aggravated felony provisions requires only that the crime be labeled by the state as a felony. However, neither case actually addressed which definition of felony to use in determining whether the crime was a felony under state law, because determination of that issue was not required. In *Hinojosa-Lopez*, the defendant's prior state conviction for simple possession was labeled by the state of Texas as a felony and was punishable by a life term. *Id.* at 694. Similarly, in *Hernandez-Avalos*, the court was confronted with a conviction for simple possession that was a class three felony under Colorado law and punishable by up to twelve years in prison. 251 F.3d at 505. In both cases, the court noted the state's classification of the crime and the maximum punishment range, apparently finding both important in concluding that the crimes were felonies under state law for purposes of the aggravated felony enhancement.

However, although these cases hold no precedential authority as to the issue we currently confront, we note that, in holding that a drug crime was a drug trafficking offense as long as it was a felony under state or federal law and was punishable under the CSA, the *Hinojosa-Lopez* and *Hernandez-Avalos* courts both relied upon *United States v. Restrepo-Aguilar*, 74 F.3d 361 (1st Cir. 1996), in which the First Circuit explicitly held that the definition of "felony" found in 21 U.S.C. § 802(13), that is, "any Federal or State offense classified by applicable Federal or State law as a felony," is applicable in determining whether a prior drug crime is an aggravated felony. *Id.* at 365. Thus, *Hinojosa-Lopez* and *Hernandez-Avalos*'s reliance on *Restrepo-Aguilar* suggests that the proper definition of "felony" to apply in this context is that in § 802(13), which asks only whether the state has labeled the crime a felony.

11

courts were required to suspend the confinement sentences of state jail felons in favor of community supervision, the government explains that such felons nevertheless were exposed to a sentence of up to two years' incarceration, because upon revocation of community supervision these individuals could be required to serve such imprisonment. Thus, the government contends that the offense was a felony punishable under the CSA under any definition.

A recent Ninth Circuit case distinguishing *Robles-Rodriguez* supports the government's position. In *United States v. Arellano-Torres*,[33] that court found that a defendant convicted under a state law that provided for a maximum punishment of more than one year but, at the same time, required suspension of the sentence and imposition of probation, was a felony for purposes of the aggravated felony enhancement. In 1999, Arellano-Torres was convicted of simple possession in Nevada.[34] Although he was sentenced to twelve to forty-eight months in state prison, Nevada law required the state court to suspend the sentence and impose probation.[35] In 2001, Arellano was indicted for illegal reentry; he subsequently pleaded guilty to the offense.[36] At sentencing, the

---

[33] 303 F.3d 1173, 1180 (9th Cir. 2002).

[34] *Id.* at 1175.

[35] *Id.*

[36] *Id.* at 1176.

12

district court enhanced Arellano's sentence by eight levels, categorizing his prior conviction as an aggravated felony.[37]

On appeal, Arellano contended that, under *Robles-Rodriguez*, his prior conviction was not a felony for purposes of the aggravated felony enhancement because the maximum punishment to which he could have been subjected was probation.[38]  The Ninth Circuit rejected this argument, reasoning:

> Nevada directs the trial court to sentence a first-time drug possessor to from one to four years in prison and then requires the court immediately to suspend the sentence in favor of probation.  If the first-time offender violates probation, the trial court may do nothing, modify the conditions of probation or revoke probation. Upon revocation, the court may either execute the originally imposed sentence or reduce that sentence and execute the modified term of imprisonment.  Because a first-time offender's probation may be revoked in favor of imprisonment, the maximum penalty for first-time simple drug possession in Nevada is not probation but rather four years in prison.[39]

The court further distinguished Nevada law from the Arizona statute at issue in *Robles-Rodriguez* by explaining that "Arizona's statutory scheme ... is materially different ... because a first time offender in Arizona will never be incarcerated for more than one year in connection with his first-time offense, even if he repeatedly violates probation."[40]  Thus, because "the prospect of

---

[37] *Id.*

[38] *Id.* at 1178.

[39] *Id.* at 1178-79 (citations omitted).

[40] *Id.* at 1179.

13

serving the originally imposed sentence of up to four years always hangs over the head of a first-time offender in Nevada," the court concluded that the appellant's prior crime was punishable by more than one year's imprisonment and "is thus a 'felony' as defined by *Robles-Rodriguez*."[41]

We find the reasoning of the Ninth Circuit in *Arellano-Torres* persuasive. Even assuming the applicable definition of felony for purposes of the aggravated felony enhancement requires a maximum punishment of over one year, the Texas law on state jail felonies in effect at the time of Caicedo's conviction demonstrates that Appellant's prior crime was a felony. State jail felonies were created in 1993 to relieve the pressures of prison overcrowding in Texas.[42] The state jail felony law fulfilled this purpose by mandating that, in most cases, courts suspend imposition of a sentence and instead impose a term of community supervision.[43] Thus, unlike the Arizona law at issue in *Robles-Rodriguez*, the Texas legislature's decision to carve out a category of certain less severe felonies such as drug possession was not a "deliberate policy choice to treat simple drug possession 'as a medical problem

---

[41] *Id.* at 1180 (citation omitted).

[42] GEORGE E. DIX & ROBERT O. DAWSON, 43A TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 39.16 (2001); *State v. Mancuso*, 919 S.W.2d 86, 90 (Tex. Crim. App. 1996) (McCormick, J., dissenting) ("Section 12.35(a) and the community supervision law in Article 42.12, Section 15, were enacted primarily to ease prison overcrowding.").

[43] *Id.*

best handled by treatment and education, not by incarceration.'"[44] To the contrary, the Texas state jail felony law, which mandated probation for first-time offenders and yet provided for imposition of a jail term upon revocation of probation, constituted both a realistic response to prison overcrowding and an attempt to preserve the legislature's judgment that state jail felonies were indeed still felonies in substance.[45]

This assessment is further borne out by the fact that state jail felons such as Caicedo suffer the same disabilities shared by other felons, such as loss of the right to vote,[46] ineligibility to be elected to public office,[47] disqualification from jury service,[48] disqualification from being a law enforcement officer or county jailer,[49] immediate removal from office in the case of a county officer,[50] and mandatory revocation of a license to be a

---

[44] *Robles-Rodriguez*, 281 F.3d at 905.

[45] *Cf. id.* ("[E]ven assuming Arizona continues nominally to classify offenses affected by [the law requiring probation for all first-time drug possessors] as felonies, they are no longer felonies in substance.").

[46] TEX. ELEC. CODE ANN. § 11.002(4) (Vernon 1995).

[47] *Id.* § 141.001(a)(4).

[48] TEX. CRIM. PROC. CODE ANN. art. 35.16(2) (Vernon 1995).

[49] TEX. GOV'T CODE ANN. § 415.058(a) (Vernon 1995).

[50] TEX. LOC. GOV'T CODE ANN. § 87.031(a) (Vernon 1995).

psychologist,[51] lottery sales agent,[52] or social worker.[53]  At the time of Appellant's conviction, state jail felonies were exempted from none of these penalties, and, in fact, Texas law specifically provided that the restoration of rights that may occur upon the completion of community supervision did not apply to state jail felons.[54]

Considering both the reason for creation of the state jail felony category and the fact that such crimes were still substantively regarded as felonies supports the notion that we should regard the applicable punishment range for state jail felonies as 180 days to two years, with the fact that a defendant is a first-time offender being, as the district court labeled it, a mere "sentencing factor" that resulted in automatic suspension of the sentence of confinement.  This interpretation squares with Texas courts' own understanding of the range of punishment for state jail felonies.  In describing state jail felony law as it existed around the time of Caicedo's prior conviction, the Texas Court of Criminal Appeals explained that "*the range of punishment for a state jail felony is confinement in a state jail for any term*

---

[51] TEX. REV. CIV. STAT. ANN. art. 4512c, § 23(a)(1) (Vernon 1995).

[52] TEX. GOV'T CODE ANN. § 466.155(a)(1)(A) (Vernon 1995).

[53] TEX. HUM. RES. CODE ANN. § 50.021(a)(11) (Vernon 1995).

[54] TEX. CRIM. PRO. CODE ANN. art. 42.12, § 20(b) (Vernon 1995); *R.R.E. v. Glenn*, 884 S.W.2d 189, 192-93 (Tex. App.–Fort Worth 1994, writ denied).

*of not more than two years or less than 180 days* and a fine not to exceed $10,000.00. [However,] that sentence must be suspended and the defendant placed on community supervision probation."[55]

In sum, we find that Caicedo's prior conviction qualifies as a "felony" for purposes of the aggravated felony provisions regardless of which definition of "felony" is applied.[56] Texas not

---

[55] *Mancuso*, 919 S.W.2d at 89 (emphasis added). *Mancuso* provides a useful example of the way in which Texas's state jail felony laws played out in practice. After appellants pleaded guilty to their state jail felony charges, under authority of Texas Penal Code § 12.35 the trial court assessed punishment for the defendants at two years confinement in a state jail. However, pursuant to Texas Code of Criminal Procedure article 42.12, § 15, it suspended imposition of the sentences and placed them on community supervision probation for a period of five years. *Id.* at 87. On appeal, the Court of Criminal Appeals affirmed these sentences. *Id.*

[56] Our conclusion is consistent with our holdings in cases presenting the analogous question of whether a suspended sentence counts as a "term of imprisonment" for purposes of determining whether a prior conviction was a crime of violence and therefore an aggravated felony under § 2L1.2. 8 U.S.C. § 1101(a)(43)(F) provides that one type of aggravated felony is "a crime of violence for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F) (2001). The phrase "term of imprisonment" refers to "the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment." *Id.* § 1101(a)(48)(B). Thus, we have explained that "our prior cases indicate that defendants who receive suspended sentences [for crimes of violence] or 'who avoid a determined period of incarceration by a process which suspends serving the term of imprisonment' remain subject to the aggravated felony definition." *United States v. Landeros-Arreola*, 260 F.3d 407, 413 (5th Cir. 2001). Contrastingly, we have found that the enhancement does not apply "when a defendant is directly sentenced to probation, with no mention of suspension of a term of imprisonment." *Id.* at 410 (internal quotation marks omitted). This analysis supports our determination here that the requirement that a court suspend certain defendants' sentences does not render meaningless the applicable range of imprisonment.

only categorized his previous crime as a felony, but also provided for a maximum term of imprisonment of two years. Therefore, the district court did not err in concluding that Appellant's drug possession conviction was a qualifying felony.

### III

Caicedo's second issue on appeal is whether the district court correctly found that his prior conviction for drug possession qualified as a "drug trafficking crime" and therefore an aggravated felony under the 2001 version of § 2L1.2. At sentencing, the district court found that Sentencing Guideline § 2L1.2(b)(1)(C) required enhancement of Caicedo's sentence by an additional eight levels not only because his prior conviction constituted a felony, but also because it constituted a drug trafficking crime and therefore an aggravated felony. Caicedo thus additionally appeals the eight-level increase on the basis that the district court utilized the wrong definition of "drug trafficking crime" and concomitantly applied the aggravated felony enhancement erroneously.

Although Caicedo was sentencing under the version of the Guidelines that became effective on November 1, 2001, a complete understanding of this issue necessitates a discussion of § 2L1.2 as it existed before the 2001 amendments. Prior to November 1, 2001, § 2L1.2(b)(1)(C) provided that a defendant convicted of illegal

18

reentry should be given a sixteen-level increase if he had a previous conviction for an "aggravated felony."[57]  The commentary to the 2000 version of this guideline explained that "'aggravated felony' is defined at 8 U.S.C. § 1101(a)(43),"[58] and § 1101(a)(43) states that the term "aggravated felony" includes, *inter alia*, "illicit trafficking in a controlled substance," as defined in 21 U.S.C. § 802, "including a drug trafficking crime" as defined in 18 U.S.C. § 924(c).[59]

In *United States v. Hinojosa-Lopez*,[60] we held that a felony conviction for simple possession of a controlled substance constituted a drug trafficking crime under 18 U.S.C. § 924(c), and therefore an aggravated felony under these prior versions of § 2L1.2.[61]  The court reached this conclusion based on § 1101(a)(43)'s provision that an aggravated felony is any offense classified as a drug trafficking crime under 18 U.S.C. § 924(c)(2), and § 924(c)(2) defines a "drug trafficking crime" as any felony punishable under the Controlled Substances Act.[62]  Because simple possession is

---

[57] *See* USSG § 2L1.2(b)(1)(A) (2000) (the version in effect directly prior to 2001 amendments).

[58] USSG § 2L1.2 App. Note 1 (2000).

[59] 8 U.S.C. § 1101(a)(43) (1994).

[60] 130 F.3d 691 (5th Cir. 1997); *see also* USSG § 2L1.2(b)(2) (1995) (the version applied in *Hinojosa-Lopez*).

[61] 130 F.3d at 693-94.

[62] 18 U.S.C. 924(c)(2) (1994).

punishable under the Controlled Substances Act,[63] we concluded that state felony convictions for simple possession were aggravated felonies.[64]

Caicedo urges that recent amendments to § 2L1.2 overrule *Hinojosa-Lopez*. In 2001, § 2L1.2 was amended to allow for a sixteen-level enhancement only if the prior felony conviction was for "(i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit."[65] The guideline further provides for a twelve-level enhancement for "a felony drug trafficking offense for which the sentence imposed was 13 months or

---

[63] 21 U.S.C. § 844.

[64] 130 F.3d at 693-94. As previously noted, in *Hinojosa-Lopez* the court rejected the appellant's argument that because simple possession is a misdemeanor under the Controlled Substances Act, it is not an aggravated felony because it does not fall under § 924(c)(2)'s definition of a drug trafficking crime, which is limited to "any *felony* punishable under the Controlled Substances Act." *Id.* (emphasis added). The court reasoned that as long as the offense is a felony under state law, it is a drug trafficking crime under § 924(c)(2), and therefore an aggravated felony, even though it is only punishable as a misdemeanor under federal law. *Id.* at 694.

[65] USSG § 2L1.2(b)(1)(A) (2001).

less."[66]  It also states that a court should impose an eight-level increase if the prior conviction was for an "aggravated felony."[67]

"Drug trafficking offense," as used in § 2L1.2, is now defined in the application notes as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."[68]  As the government concedes, this definition clearly excludes simple possession of a controlled substance.  However, as with the 2000 Guidelines, the application notes still explain that an "'aggravated felony' has the meaning given that term in 8 U.S.C. § 1101(a)(43)."[69]  By continuing to reference § 1101(a)(43) for its definition of aggravated felony, § 2L1.2 persists in labeling § 924(c)(2) drug trafficking offenses, including simple possession, as aggravated felonies.  Thus, this guideline implicates two distinct–and conflicting–definitions of drug trafficking crimes.

The drug trafficking offense definition provided in the commentary to § 2L1.2 clearly applies to the explicit reference to

---

[66] *Id.* § 2L1.2(b)(1)(B).

[67] *Id.* § 2L1.2(b)(1)(C).

[68] *Id.* cmt. n.1(B)(ii).

[69] *Id.* cmt. n. 2.

21

"drug trafficking offense" in the guideline's sixteen- and twelve-level enhancement provisions. However, the question arises whether this definition also applies to those drug trafficking crimes considered aggravated felonies warranting eight-level increases. Appellant argues that the application notes' definition of "drug trafficking offense" supercedes the definition of drug trafficking crime in 18 U.S.C. § 924(c)(2) for purposes of determining what prior convictions constitute aggravated felonies. He asserts that this court must view the definition proffered in the guideline as a statement by the Sentencing Commission that *Hinojosa-Lopez*'s interpretation of "drug trafficking crime" in 8 U.S.C. § 1101(a)(43) to include simple possession within the purview of aggravated felonies was in error.

Although no other circuit courts have spoken on this issue, two district courts, one within this circuit, have adopted Appellant's position. In *United States v. Sanchez*,[70] a district court in the Western District of Texas held that the definition of "drug trafficking offense" found in the application notes to the 2001 Sentencing Guidelines should be applied not only to drug trafficking offenses warranting sixteen- or twelve- level increases, but also to aggravated felonies warranting eight-level increases.[71] The court concluded that applying one definition of

---

[70] 179 F. Supp. 2d 689 (W.D. Tex. 2001) (Justice, J.).

[71] *Id.* at 692.

22

drug trafficking crimes to the sixteen- or twelve-level enhancements and another to the aggravated felony enhancement would violate the "accepted rule of statutory construction that 'identical words used in different parts of the same act are intended to have the same meaning'":

> Put more starkly, to properly sentence a defendant such as this one for illegal re-entry, a court would have to find that the defendant's prior conviction both *is and is not* a drug trafficking offense. It borders on the irrational to assume that the Sentencing Commission—much less Congress—would intend such an outcome.[72]

The district court also found that the Sentencing Commission intended its recent revisions of the illegal reentry guidelines to "respond to concerns about disproportionate sentences resulting from an overbroad definition of 'aggravated felony' in previous guidelines."[73] The *Sanchez* court concluded, "it is clear that the Sentencing Commission intended to narrow the definition of 'aggravated felony,' in particular by carving out 'drug trafficking offenses' and targeting them with a carefully crafted, graduated scheme of penalties."[74]

Utilizing different reasoning, a district court in the Southern District of New York has concurred with the result reached

---

[72] *Id.* at 691.

[73] *Id.*

[74] *Id.*

in *Sanchez*.[75] In *United States v. Ramirez*, the court reasoned that, if simple possession were truly a drug trafficking crime for purposes of the aggravated felony enhancement, it should also be a drug trafficking crime for purposes of the sixteen- and twelve-level enhancement provisions that apply specifically to drug trafficking crimes, a result the court deemed "Kafkaesque."[76]

Contrary to *Sanchez* and *Ramirez*, we conclude that the definition of "drug trafficking crime" found in § 2L1.2 does not supercede that in 8 U.S.C. § 1101(a)(43) for purposes of the aggravated felony enhancement. Although rendering the guideline less clear than is desirable, § 2L1.2's implication of two distinct definitions of drug trafficking crimes is neither repugnant to principles of statutory construction nor inconsistent with the Sentencing Commission's prior practice. Looking to a parallel situation within § 2L1.2, relating to the dual definitions of "crimes of violence," we note that the Sentencing Commission's practice of incorporating multiple definitions of the same term is, it turns out, not new. The 2000 version of § 2L1.2 referenced crimes of violence in two places. The first was in §2L1.2(b)(1)(A), which provided that prior convictions for aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43),

---

[75] *United States v. Ramirez*, No. 01-CR-888(DAB), 2002 WL 31016657 (S.D.N.Y. Sept. 9, 2002).

[76] *Id.* at *2.

24

warranted a sixteen-level increase.[77]  Section 1101(a)(43) provides

that one type of aggravated felony is "a crime of violence (as

defined in section 16 of Title 18, but not including a purely

political offense) for which the term of imprisonment [is] at least

one year."[78]  18 U.S.C. § 16, in turn, defines a crime of violence

as:

> (a) an offense that has as an element the use, attempted
> use, or threatened use of physical force against the
> person or property of another, or
> (b) any other offense that is a felony and that, by its
> nature, involves a substantial risk that physical force
> against the person or property of another may be used in
> the course of committing the offense.[79]

However, crimes of violence were also mentioned explicitly in

§ 2L1.2(b)(1)(B), which provided a four-level increase if a

defendant had a prior conviction for three or more misdemeanor

"crimes of violence."[80]  Application note 1 to the guideline

explained, "'[c]rimes of violence' ... are defined in § 4B1.2."[81]

4B1.2 provided:

> (a)  The term "crime of violence" means any offense under
> federal or state law ... that–
> (1)  has as an element the use, attempted use, or
>      threatened use of physical force against the person
>      of another, or

---

[77] USSG § 2L1.2(b)(1)(A) & cmt. n.1 (2000).

[78] § 1101(a)(43)(F).

[79] 18 U.S.C. § 16 (1994).

[80] USSG § 2L1.2(b)(1)(B) (2000) (emphasis added).

[81] *Id.* cmt. n.1.

25

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[82]

The two definitions of crimes of violence referenced in the guideline differ most obviously in the categories of property crimes included within their relative purviews. While the definition found in § 16 includes all manner of crime that threatens force against property, § 4B1.2 only includes those property crimes that present the potential for serious harm to an individual.

Previously presented with circumstances akin to those contained in the case at hand, we have applied the 18 U.S.C. § 16 definition of "crimes of violence" in determining whether a defendant's prior crime constitutes an aggravated felony, despite the application notes' explicit reference to § 4B1.2's definition of the term. For instance, in *United States v. Chapa-Garza*,[83] we explained that § 16, not § 4B1.2, presented the applicable

---

[82] USSG § 4B1.2 (2000). The application notes add,

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth ... in the court of which the defendant was convicted involved use of explosives ... or, by its nature, presented a serious potential risk of physical injury to another.

[83] 243 F.3d 921 (5th Cir. 2001).

26

definition for crimes of violence that fall under the aggravated felony enhancement. Furthermore, we rejected the government's argument that § 16 should be construed the same as § 4B1.2, noting another obvious dissimilarity in the definitions:

> Guideline 4B1.2(a)(2)'s "otherwise" clause contains broader language than does section 16(b). Guideline 4B1.2(a)(2) only requires that the offense involve conduct that poses a serious risk of physical injury to another person. It does not require, as section 16(b) does, that there be a substantial risk that the defendant will *use* physical force against another's person or property *in the course of committing the offense*. Guideline 4B1.2(a)(2)'s otherwise clause concerns only the risk of one particular *effect* (physical injury to another's person or property) of the defendant's conduct *itself*, as there is no requirement that there be a substantial risk that another's person or property will sustain injury, but only that there be a substantial risk that the defendant will *use* physical force against another's person or property *in the course of committing the offense*.[84]

As *Chapa-Garza* demonstrates, on prior occasions we have chosen to apply the definition of "crime of violence" referenced in § 1101(a)(43), rather than the definition explicitly provided for in the application notes, when the issue was whether a crime of violence constituted an aggravated felony.[85] We presume that the Sentencing Commission had knowledge of this practice when it drafted the 2001 amendments.

---

[84] *Id.* at 925.

[85] *Cf. United States v. DeSantiago-Gonzalez*, 207 F.3d 261, 263 (5th Cir. 2000) (applying § 4B1.2's definition of crime of violence in determining whether defendant's four-level enhancement under § 2L1.2(b)(1)(B)(ii) for having committed three prior misdemeanor crimes of violence was proper).

The Sentencing Commission has continued its practice of referencing two definitions for crimes of violence. Like the 2000 version, the 2001 amendments to § 2L1.2 reference differing definitions of the term. As with "drug trafficking crimes," "crimes of violence" are now explicitly defined in the application notes to the 2001 version of § 2L1.2. The new definition provides:

> "Crime of violence"–
>     (I)  means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and
>     (II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.[86]

This definition, like the one provided in the application notes for "drug trafficking offense," is to be applied "[f]or purposes of subsection (b)(1)," which includes all sentencing enhancement provisions of § 2L1.2.[87] Yet, as with drug trafficking offenses, crimes of violence are still included within the purview of § 1101(a)(43) aggravated felonies. Section 1101(a)(43) still defines crimes of violence according to 18 U.S.C. § 16. Thus, just as the 2000 Guidelines presented two different definitions for crimes of violence, so does the 2001 version.

Although, at first glance, the Sentencing Guidelines' inclusion of two separate definitions of crimes of violence and

---

[86] USSG § 2L1.2 cmt. n.1(B)(ii) (2001).

[87] *Id.* cmt. n.1(B).

drug trafficking crimes seems not only inexplicable but inherently irrational, the Commission's commentary to the 2001 amendments intimates that its inclusion of the two definitions of crimes of violence and drug trafficking offenses in the 2001 version of § 2L1.2 was purposeful.  It explained,

> This amendment responds to concerns raised by a number of judges, probation officers, and defense attorneys ... that § 2L1.2 ... sometimes results in disproportionate penalties because of the 16-level enhancement provided in the guideline for a prior conviction for an aggravated felony.  The disproportionate penalties result because the breadth of the definition of "aggravated felony" provided in 8 U.S.C. § 1101(a)(43), which is incorporated into the guideline by reference, means that a defendant who previously was convicted of murder, for example, receives the same 16-level enhancement as a defendant previously convicted of simple assault....
> This amendment responds to these concerns by providing a more graduated sentencing enhancement of between 8 levels and 16 levels, depending on the seriousness of the prior aggravated felony....[88]

These statements reveal that the Commission intended the guideline amendments to break up aggravated felonies by providing for the sixteen-level increase only in the case of the more serious offenses, *e.g.*, murder or serious drug trafficking offenses for which the sentence imposed was over 13 months, while providing lesser penalties for the less serious, but still aggravated, offenses, *e.g.*, assault and simple drug possession.  To create this scheme, the Commission developed two categories of crimes of violence and drug trafficking offenses, separating those acts that

---

[88] USSG app. C, comment. to amend. 632 (2001).

are more serious from those that are less so. Therefore, the narrow definitions of crimes of violence and drug trafficking crimes found in the application notes, which are applicable to explicit mentions of crimes of violence and drug trafficking offenses in the provision requiring the sixteen- and twelve-level enhancements, lists more severe types of these crimes. In contrast, the broader definitions of crimes of violence and drug trafficking offenses referenced in § 1101(a)(43) apply to less severe aggravated felonies that warrant the eight-level enhancement. Thus, contrary to the *Sanchez* court's understanding, the commentary to these amendments does not imply that crimes like simple assault or simple drug possession should be erased altogether from the category of aggravated felonies, which would be the result if the narrower definition of "crimes of violence" and "drug trafficking offenses" applied to both the sixteen- and eight-level enhancements. Rather, the commentary makes clear that amendments' purpose was to apply a graduated scheme of penalties to aggravated felonies depending on their severity.

## IV

In conclusion, the district court did not err in basing its sentencing determination on its finding that defendant committed a "felony" and a "drug trafficking crime" for purposes of the aggravated felony provisions contained in 8 U.S.C. § 1326(b)(2) and Sentencing Guideline § 2L1.2.

30

AFFIRMED.