IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-30876

UNITED STATES OF AMERICA

                    Plaintiff - Appellee

v.

CARLOS WILMER PALACIOS, also known as Jose Perez Antonio, also
known as Jose Maurico Palacio, also known as Marcos Rodriguez-Alvarenga,
also known as Jose Maurico Palacios, also known as Jesus Enriquez, also
known as Carlos Hernandez, also known as Carlos Palacios-Palacios, also
known as Marcos Rodriguez, also known as Carlos Wilmer Hernandez, also
known as Samuel Rodriguez, also known as Wilmer Palacios, also known as
C W Palacios, also known as Jose Hernandez Palacio, also known as Jose
Antonio Perez, also known as Antonio Rodriguez

                    Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
No. 2:06-CR-169-1

Before KING, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

        Defendant-appellant Carlos Wilmer Palacios appeals the forty-four-month

prison sentence imposed by the district court after he pleaded guilty to illegal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

reentry into the United States following deportation. We AFFIRM the sentence as reasonable.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2006, Carlos Wilmer Palacios was indicted in the Eastern District of Louisiana on a charge of reentering the United States illegally following deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1] Palacios had been deported on five prior occasions, two of which followed convictions for criminal offenses.[2] In particular, on September 24, 1997, he was deported after pleading guilty to a Utah drug offense and serving a forty-four-day sentence (the "Utah drug conviction"). In 2003, he was discovered in the United States, and he pleaded guilty in the Southern District of Mississippi to illegally reentering the United States after deportation (the "Mississippi reentry conviction"). He was sentenced to twenty-eight months in prison and a three-year term of supervised release based on a § 1326(b)(2) enhancement for being an alien with a prior aggravated felony conviction. Palacios was again deported on May 28, 2005.

On August 9, 2006, Palacios pleaded guilty to the illegal reentry charge in this case without the benefit of a plea agreement. Before the district court accepted Palacios's plea, it instructed him that he was pleading guilty to illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2) and listed the elements of the offense. The elements did not include a previous conviction for an aggravated felony; however, the district court informed Palacios that for the maximum

---

[1] Specifically, Count One charged that "[o]n or about May 31, 2006, [Palacios] . . . , an alien who had previously been removed and deported from the United States, was knowingly and unlawfully found in the United States in Orleans Parish, Louisiana, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security . . . , having expressly consented to [Palacios's] reapplication for admission into the United States."

[2] The dates of Palacios's prior deportations are as follows: January 4, 1979; August 26, 1980; April 12, 1995; September 24, 1997; July 12, 1999; and May 28, 2005.

prison term of twenty years to apply, the Government must show a prior aggravated felony conviction. The district court informed Palacios that in the absence of such a showing, the maximum term of imprisonment would be two years. Thereafter, Palacios entered his guilty plea. Palacios and his attorney also signed a Factual Basis that stated, in part:

> Palacios was deported following a 2003 conviction in the Southern District of Mississippi . . . for a violation of Title 8, United States Code, Section 1326(a)(2) and (b)(2) to wit: being an aggravated felon who having been previously deported reentered the United States without consent of the Attorney General.

(Emphasis added). Palacios confirmed at his rearraignment that he had read, understood, and agreed with the contents of the Factual Basis.

A Presentence Investigation Report (the "PSR") was subsequently prepared. The PSR described the Utah drug conviction as "attempted distribution of a controlled substance," a felony drug trafficking offense, permitting a twelve-level sentence enhancement under the Sentencing Guidelines. See U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2L1.2(b)(1)(B) (2006). This twelve-level enhancement was added to the base offense level of eight already assigned to Palacios. See § 2L1.2(a). After a three-level reduction for acceptance of responsibility, see § 3E1.1(b), Palacios received a total offense level of seventeen and a resulting recommended Guidelines range of thirty-seven to forty-six months of imprisonment. See § 5A, Sentencing Table. At the sentencing hearing, the district court first asked Palacios whether he had read and understood the PSR, and Palacios confirmed that he had. The district court then asked whether Palacios had any questions regarding the contents of the PSR, to which Palacios responded, "No, sir, I don't, sir." After overruling an objection by Palacios that is unrelated to this appeal, the district court asked one final time: "Does any party wish to make any other corrections, alterations,

additions or objections to the PS[R]?" Counsel for Palacios and the Government both responded in the negative. The district court adopted the findings of the PSR and sentenced Palacios to forty-four months of imprisonment.

Palacios thereafter appealed this sentence, arguing that the district court erred in relying on the PSR's characterization of the Utah drug conviction as a drug trafficking offense to enhance the Guidelines range. He asserted that the Utah drug conviction was for simple possession of a controlled substance, not attempted distribution of a controlled substance. Because simple possession is not considered a drug trafficking offense under § 2L1.2(b)(1)(B), see United States v. Caicedo-Cuero, 312 F.3d 697, 707 (5th Cir. 2002), Palacios urged that the enhancement was unwarranted. Palacios supplemented the record on appeal with three documents related to the Utah conviction: (1) the bill of information, which charged Palacios under UTAH CODE ANN. § 58-37-8(1)(a)(ii) with "unlawful distribution, offering, agreeing, consenting or arranging to distribute a controlled or counterfeit substance"; (2) the judgment of conviction for "attempted possession"; and (3) the docket sheet, which stated that Palacios had pleaded guilty to attempted distribution. The Government correspondingly supplemented the record with three documents from the Mississippi reentry conviction: (1) an indictment charging Palacios with illegal reentry and stating that Palacios had "previously been convicted . . . of Attempted Distribution of a Controlled Substance"; (2) a judgment indicating that Palacios pleaded guilty to the Mississippi indictment, and (3) a memorandum of understanding Palacios signed acknowledging that the maximum penalty for the Mississippi reentry violation was a prison term of twenty years (the statutory maximum for someone who has previously committed an aggravated felony).

Applying a plain error standard of review, this court held that the district court committed clear and obvious error when it relied on the PSR's characterization of the Utah drug conviction. United States v. Palacios, 239

F. App'x 57, 59 (2007).  We noted that to determine whether a prior conviction is a drug trafficking offense, the district court may consider "'the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" Id. (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).  Because we found that "the state court judgment and information are too ambiguous to show whether Palacios was convicted of a drug trafficking offense," we vacated the sentence and remanded for development of the record and resentencing.  Id.

On remand, the documents added to the record on appeal were specifically introduced.  The district court held a resentencing hearing at which Palacios admitted that the Utah drug conviction stemmed from an incident in which he obtained cocaine from a friend for a female undercover agent he met at a bar; however, he stated that he was allowed to plead to possession.  Palacios claimed that he had not objected to the characterization of his conviction during his prior sentencing hearing or his illegal reentry proceedings because no one had explained to him the legal distinction between a conviction for attempted possession and a conviction for attempted distribution for the purpose of sentence enhancements.  Palacios also urged the district court to consider, when imposing the sentence, his need to return to El Salvador to support his family and his exemplary conduct in building and repairing homes in New Orleans.

In a ruling issued from the bench, the district court found that the twelve-level sentence enhancement initially given to Palacios was supported by the evidence.  Citing United States v. Martinez-Vega, 471 F.3d 559 (5th Cir. 2006), and Kemph v. Estelle, 621 F.2d 162 (5th Cir. 1980), the district court emphasized that it could use all the facts admitted by a defendant, and that a defendant could not stipulate to certain facts before the court and then attempt to deny or evade those stipulations.  Although the district court stated that it had

considered "the various Shepard approved documents," it did not discuss them. It concluded that the twelve-level sentence enhancement was proper "considering [Palacios's] guilty plea, his prior federal conviction for the same aggravated felony, and his admission to the facts in the PSR." The district court resentenced Palacios to forty-four months of imprisonment.

The district court also gave an alternative basis for its sentence. Taking note of Palacios's contention that the proper Guidelines range should have been fifteen to twenty-one months,[3] the district court stated that even under this lower Guidelines range, it would impose a forty-four-month sentence as an upward departure. It cited the likelihood of recidivism, given Palacios's previous deportations and illegal reentries. The court also noted that the longer sentence would reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public. Judgment was entered on September 14, 2007, and Palacios filed a notice of appeal the same day.

## II. DISCUSSION

Palacios challenges the district court's decision to apply a twelve-level sentence enhancement to calculate the Guidelines range, arguing that the Government failed to establish that he had a prior conviction for an aggravated felony. Palacios maintains that he neither admitted nor waived his objection to the characterization of the Utah drug conviction as attempted distribution, a drug trafficking offense and an aggravated felony under the Guidelines, by pleading guilty to illegal reentry in this case or earlier in the Mississippi reentry case. Specifically, Palacios submits that: (1) at the rearraignment in this case, the district court did not include a prior conviction for an aggravated felony as

---

[3] This would have been the Guidelines range if the Utah drug conviction was considered a mere possession offense. See U.S.S.G. § 2L1.2(b)(1)(D). The statutory maximum would have been ten years. See 8 U.S.C. § 1326(b)(1).

an element of the offense but rather stated the government would have to prove it at sentencing; (2) at the time of the Mississippi rearraignment in 2003, the Supreme Court had not yet decided Lopez v. Gonzales, 127 S. Ct. 625 (2006), which clarifies the distinction between distribution and possession for purposes of the "aggravated felony" classification; and (3) his failure to object to the PSR did not constitute an affirmative assent to its contents. In addition, Palacios challenges the district court's alternative grounds for the forty-four-month sentence, arguing that the district court gave too much weight to his criminal history and disregarded several mitigating factors without explanation.[4]

Our "review of sentencing decisions is limited to determining whether they are 'reasonable.'" Gall v. United States, 128 S. Ct. 586, 594 (2007). "Regardless of whether the sentence imposed is inside or outside the Guidelines range," the sentence is reviewed under an abuse-of-discretion standard. Id. at 597. Because we conclude that the district court's alternative sentence for Palacios constituted a reasonable departure from the Guidelines, we do not need to reach Palacios's first point of error—the issue of waiver. See, e.g., United States v. Klups, 514 F.3d 532, 536 (6th Cir. 2008) (post-Gall) (concluding that the district court's alternative sentence based on the factors outlined in § 3553(a) constituted a reasonable variance from the Guidelines and thus not reaching the issue of upward departure).

Initially, we examine whether the district court committed any significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the

---

[4] Palacios also argues that the district court erred by imposing an upward departure without providing advance notice, but he acknowledges that this argument is foreclosed by this circuit's precedent. See United States v. Mejia-Huerta, 480 F.3d 713, 723 (5th Cir. 2007) ("[W]e conclude that sentencing courts are not required to give pre-sentencing notice of their sua sponte intention to impose a non-Guidelines sentence.").

[18 U.S.C.] § 3553(a) factors,[5] selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall, 128 S. Ct. at 597. In surveying for procedural error, we still review the "'district court's interpretation or application of the Sentencing Guidelines . . . de novo, and its factual findings . . . [ ] for clear error. There is no clear error if the district court's finding is plausible in light of the record as a whole.'" United States v. Cisneros-Gutierrez, — F.3d —, No. 06-11156, 2008 WL 383024 (5th Cir. Feb. 13, 2008) (post-Gall) (quoting United States v. Juarez-Duarte, 513 F.3d 204, 208 (5th

---

[5] Section 3553(a) provides:

(a)  Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

   (1)  the nature and circumstances of the offense and history and characteristics of the defendant;
   (2)  the need for the sentence imposed—
       (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
       (B)  to afford adequate deterrence to criminal conduct;
       (C)  to protect the public from further crimes of the defendant; and
       (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3)  the kinds of sentences available;
   (4)  the kinds of sentence and the sentencing range established [by the Guidelines];
   (5)  any pertinent policy statement [issued by the Sentencing Commission];
   (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
   (7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Cir. 2008)). Then, "[a]ssuming that the district court's sentencing decision is procedurally sound, [we] consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall, 128 S. Ct. at 597.

Further, even if the district court imposed a sentence outside the Guidelines range, we may not apply a presumption of unreasonableness. Id. The extent of the deviation may be considered, but we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. That we "might reasonably have concluded that a different sentence was appropriate" is an insufficient justification for reversal of the district court. Id. This is because the sentencing judge is in a superior position to evaluate the § 3553(a) factors, given that "[t]he judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." Id. at 597 (internal quotations omitted).

Here, in imposing the alternative sentence, the district court committed no significant procedural error. According to the district court, the forty-four-month prison term represented a warranted upward departure from the lower Guidelines range of fifteen to twenty-one months urged by Palacios. This lower Guidelines range is calculated by assuming that Palacios's Utah drug conviction was for mere possession, a fact that Palacios clearly admits and the judgment of conviction explicitly states. Finding no errors in this calculation,[6] we further note that the district court allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered several of the

---

[6] As earlier noted, the base offense level for Palacios is eight. U.S.S.G. § 2L1.2(a). Assuming the Utah drug conviction was for possession, the appropriate enhancement to the base offense level would be four. See U.S.S.G. § 2L1.2(b)(1)(D). After deduction of two levels for acceptance of responsibility, § 3E1.1(a), the total offense level would be ten. Combined with a criminal history category of IV, as stated in the PSR, an offense level of ten yields a Guidelines range of fifteen to twenty-one months. See § 5A, Sentencing Table.

relevant § 3553(a) factors, and sufficiently documented its reasoning. Specifically, the district court discussed Palacios's history and characteristics, as directed by § 3553(a)(1), at some length. The court also mentioned that its upward departure was supported under § 3553(a)(2)(A), stating that "the sentence reflects the seriousness of the offense, [ ] promotes respect for the law, [and] provides just punishment." The court addressed other factors as well. After considering "the likelihood that [Palacios] would commit other crimes," given that Palacios "has previous convictions for illegal reentry after deportation and has been deported on at least three separate occasions," the district court noted that the sentence "affords adequate deterrence" and "protects the public." See § 3553(a)(2)(B)–(C).

However, Palacios claims that the district court's examination of his proffered mitigating factors was unsatisfactory. Palacios maintains that the following should have weighed in favor of a lighter sentence: his need to return to El Salvador to support his family; his exemplary conduct while in the United States, as evidenced by letters from homeowners praising his work in rebuilding after Hurrican Katrina; his long-term connection to the United States, including that he grew up here and has two adult children attending school in California; and his vow not to return to the United States. We are not persuaded.

The district court need only "set forth enough [reasons] to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita v. United States, 127 S. Ct. 2456, 2468 (2007). Contrary to Palacios's assertions, the district court adequately addressed his mitigating factors. In particular, the district court discussed Palacios's claim that he needed to return to his wife and three children in El Salvador, stating, "The fact that [Palacios] has been deported at least once already tends to undercut the argument that he cannot

be incarcerated here because he would so desire to return to his family." The court further noted that

> the problem in this particular case is that [Palacios] does have some history of disregarding the laws of the country. In addition to the reentry issue.[7] This is not the first time he has been here and the subject of deportation proceedings. So, you know, this is not your usual case of someone who entered the country in order to make a living and send money back home in order to feed his family.

The district court also took into account Palacios's positive characteristics, mentioning that it had received and reviewed the letters submitted on his behalf.[8] And although Palacios's assertion that he returned to the United States because he was reared here and has adult children here provides a fairly innocuous explanation for his repeated illegal reentries, his close connections to the United States also make it more likely he would desire to reenter in the future, despite his vow never to return, thereby increasing the need for specific deterrence in this case.[9]

Given the deferential abuse of discretion standard of review, we conclude that the forty-four-month alternative sentence was reasonable. The district

---

[7] The district court was apparently referring to Palacios's Utah drug conviction and a 2002 conviction for false pretenses arising out of an incident in which Palacios obtained a $1,000 refund by cancelling a money wire without the authorization of the victim. The money wire conviction led to the discovery that Palacios was in the United States illegally, prompting his Mississippi reentry conviction.

[8] Specifically addressing Palacios, the district court stated, "I would like to acknowledge that I have received several letters submitted on your behalf from persons. Most recently the court received a letter from [a homeowner]. Apparently, you have done some work for her. I do appreciate those letters and I have personally reviewed those letters in connection with your sentence." (Emphasis added).

[9] After all, a review of the PSR reveals that Palacios was last deported on May 28, 2005, after serving twenty-eight months in federal prison for the Mississippi reentry violation, and illegally reentered a mere 20 days later on June 17, 2005, near Laredo, Texas.

court committed no significant procedural error and sufficiently explained that the § 3553(a) factors, on the whole, justified the sentence.  See Gall, 128 S. Ct. at 602 ("On abuse-of-discretion review, the Court of Appeals should [ ] give[] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.").

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction and sentence.